## MURRAY *v.* STATE.

(In Banc. December 8, 1947. Suggestion of Error Overruled January 12, 1948.)

[32 So. (2d) 789. No. 36526.]

ON SUGGESTION OF ERROR.

(In Banc.   January 12, 1948.)

[33 So. (2d) 291.   No. 36526.]

**English Lindsey,** of Gulfport, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Appellant was convicted of murder, and from a verdict and judgment carrying capital punishment, he appeals.

Appellant was the sole occupant as prisoner in the jail at Wiggins. His victim was the jailer, E. M. Reynolds. Mr. Reynolds was last seen alive upon the morning of the homicide, while carrying victuals from his home to the prisoner.

A witness who was working outside the building heard sounds of a struggle about 8:30 A. M. He reported this circumstance to the sheriff, and one of his deputies proceeded to the jail and found the door open, the prisoner escaped, and the jailer lying upon the floor in a pool of blood, unconscious and mortally wounded. Death followed shortly thereafter.

Near the body witnesses found a piece of pipe with a faucet attached, and an iron shackle or leg-iron, both of which bore particles of hair and blood. The jailer was grievously wounded by multiple blows upon the head and at the base of the skull, penetrating and exposing parts of the brain tissue. His arm suffered several fractures. The defendant was shortly thereafter seen running across the yard of a witness, from whom he requested clean clothes to replace those he wore which were stained with blood.

Self-defense was interposed as the plea of the defendant. His version was that when the jailer came to the

cell bearing the prisoner's breakfast, the latter was asleep; that the jailer proceeded at once to kick him, saying "wake up you black so and so"; a statement later elaborated with the addition "wake up and see yourself die"; that the jailer then struck at him, and in the scuffle which followed the prisoner felled him with a blow from his fist. He denied using either the pipe or the shackle. He sought to attribute the death to the victim's fall upon the floor.

Appellant invokes Weathersby v. State, 165 Miss. 207, 147 So. 481, and similar cases which require that when there are no eyewitnesses other than the defendant, his version of the homicide must be accepted "if reasonable," and "unless substantially contradicted in material particulars by a credible witness or witnesses for the State or by the physical facts or by facts of common knowledge."

We cannot do otherwise than deny the application of this principle here since the defendant's version is palpably contradicted by physical facts.

Error is predicated upon the failure of the State to show that the blood and hair upon the two instruments were of human origin, and that objection ought to have been sustained to the statement of the examining physician that in his opinion the wounds were inflicted by "something resembling a tong" which lay beside the body. As to the first assignment, the testimony was quite relevant as part of the description of the alleged weapons and the State was free to forego further and more incriminating identification. Appellant asserts that the jailer had a piece of iron in his hand, and that he saw a "piece of pipe" on the floor as he left the cell to escape.

As to the second assignment, we find no reversible error. Regardless of whether the comment of the physician was an attempt expertly to describe the wounds in terms of a typical causation or whether he was gratuitously venturing a lay opinion, prejudice cannot be found therefrom. Moreover, the shackle is described as resembling a tong. The identity of the lethal instrument

is not so important as the fact that one was used, and it is not material whether the jury found that either or both were used. Certainly, the evident fact that the blows were inflicted by an instrument of the type of those introduced rather than by blows of a fist would save the comment from prejudicial error.

The case was fairly and ably tried under due process. Defense counsel appointed by the court were faithful and skillful in defendant's behalf. The verdict of the jury must stand.

Affirmed, and the date of execution set for Friday, January 30, 1948.

### On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the court on suggestion of error.

Because of the serious charge here involved and our sense of responsibility we deem it appropriate to make some response to the suggestion of error so earnestly pressed. We shall therefore notice, respectively, each point assigned as error lest our failure to reply fully and specifically thereto be construed as oversight.

Point one is that the plea of self-defense ought to be accepted as conclusively proven, since the only available eyewitness, the defendant, is not contradicted in material particulars by the physical facts or by facts of common knowledge. We have concluded that our opinion sufficiently answers the contention that the jury and this Court ought to have accepted the defendant's version that he acted solely in self-defense, striking the deceased only with his fist. The nature and extent of the wounds upon the deceased belie this version and the issue as to the credibility of the defendant as a witness and as to whether if he was called on to defend himself he used only reasonable and necessary means of defense was for the jury.

A seeming inadvertence in factual detail is suggested by our statement that defendant's version was "that when the jailer came to the cell bearing the prisoner's breakfast the latter was asleep; that the jailer proceeded at once to kick him . . ." It is suggested that the altercation occurred about thirty or forty-five minutes later after the prisoner had taken his breakfast and again fallen asleep. The defendant stated at the outset the following: "On that day I was in my cell asleep and the jailer come in the room that morning and kicked me."

We are unable to find any evidential significance as a result of any election as to which version was correct. Whether the assault occurred at the time the morning meal was brought or a few minutes later after he had again fallen asleep could not be material. The argument now made that it would advantage the appellant to show that the jailer later entered the cell without purpose or authority and deliberately awakened the defendant to provoke an assault, would seem to overlook the plausibility of a theory that the prisoner was disturbed in his slumbers in order to supply him breakfast.

Point two re-argues the alleged error in refusing to exclude the attending physician's gratuitous statement that in his opinion a designated instrument caused the injuries to the deceased. We do not minimize this contention by a conclusion that our former comments are deemed adequate.

Point three is that is was incumbent upon the State to show that the defendant was lawfully confined in jail. We do not think so. The record does not disclose the charge upon which he was being held, nor is this material in view of the fact that the defendant does not justify his assault by an effort to escape unlawful imprisonment, but by a plea of self-defense.

Point four is that the defendant was denied a public trial. Counsel correctly construes our concise statement

that the defendant was awarded ''due process'' as being a summary answer to this contention. We did not recite the circumstances by which it is sought to support this assignment. It is sufficient here to state that the trial was in both a popular and legal sense public. Appellant argues, with some originality, that it was ''too public.'' It is explained that due to the crowded condition of the main floor of the courtroom certain groups were requested to avail of the balcony. Any complaint stimulated by this procedure would therefore lie in the mouth, not of the defendant, but to those who saw fit to construe this course as a denial of equal protection of the laws. Umbrage thus engendered would presuppose that balcony seats were less desirable and the floor seats more privileged. Consistency would require that, if location be the test, the converse would likewise be true, thus placing the definition of equal privilege within the range of individual caprice.

However, counsel raises a point more substantial than the personal whim of the spectators. It is asserted that the seating arrangement, suggested pursuant to a custom whose immemorial usage and sanction has made routine, resulted in a concentration in the balcony of those of the same race as the defendant. As a matter of record, only two persons of this group had seen fit to avail of this particular vantage point and none were denied access thereto. Assuming that this seating arrangement was insisted upon and deemed prejudicial such as were piqued thereby—as to which there is no showing—such reactions may not be magnified into a fancied denial of constitutional rights and thereupon made assignable to the defendant. Were the several indicated assumptions builded one upon the other—thus doing violence to our adjective law—they could not and would not divest the defendant of the substantive right to the protection of an unimpaired presumption of innocence, nor deny to him the law's equal protection.

Our elaboration of our former views is made in deference to the serious and solemn judgment rendered herein and in the discharge of a duty whose responsibilities must likewise have been appreciated by the trial jury.

Overruled.